UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
HOWARD WALLACE                      : 05 Civ. 0567 (SHS)(JCF)
                                    :
            Petitioner,             :        REPORT AND
                                    :        RECOMMENDATION
    - against -                     :
                                    :
DALE ARTUS, Superintendent,         :
Clinton Correctional Facility; and  :
ELLIOT SPITZER, New York Attorney   :
General                             :
                                    :
            Respondent.             :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:

Howard Wallace petitions for a writ of habeas corpus pursuant to 28 U.S.C § 2254, challenging his conviction on three counts of robbery in the first degree following a jury trial in New York State Supreme Court, New York County. The petition raises five claims, two of which are unexhausted but without merit, as discussed in a prior ruling. In the remaining three claims, the petitioner alleges that: (1) he was denied due process when the trial court permitted testimony indicating that he had confessed to robberies for which he was not charged; (2) he was denied due process because the sentence imposed upon him was vindictive; and (3) he received ineffective assistance of counsel. For the reasons set forth below, I recommend that the petition be denied.

Background

In the spring of 1993, Mr. Wallace committed several robberies

while armed with a knife. (Tr. at 8).[1] One of the victims died of cardiac arrest shortly after Mr. Wallace robbed him. (Tr. at 10). The prosecution charged Mr. Wallace with one count of murder in the second degree and seven counts of robbery in the first degree. See N.Y. Penal Law §§ 125.25(3), 160.15(3).

In July 1994, the Honorable Howard E. Bell presided over a suppression hearing. (Brief for Respondent ("Resp. Memo."), attached as Exh. B to Declaration of Malancha Chandha dated November 8, 2005 ("Chandha Decl."), at 2). Mr. Wallace moved to suppress (1) evidence seized from his apartment; (2) testimony concerning lineup identifications; and (3) statements he made to police officers and to the prosecution. (Resp. Memo. at 2). The court denied the motion to suppress except with respect to statements Mr. Wallace had made to the Assistant District Attorney. (Resp. Memo. at 2-3).

After a trial before Justice Bell and a jury in September 1994, Mr. Wallace was convicted of one count of murder in the second degree and five counts of robbery in the first degree. (Resp. Memo. at 3). The court then adjudicated Mr. Wallace a persistent violent felony offender pursuant to New York Criminal Procedure Law ("CPL") § 400.16, and sentenced him to an aggregate indeterminate prison term of 80 years to life: 20 years to life imprisonment on the count of second degree murder, running

---

[1] "Tr." refers to the transcript of the petitioner's trial that began on September 21, 2000.

consecutively to five consecutive terms of 12 years to life for each count of first degree robbery. (Brief for Defendant-Appellant at 3, attached as Exh. A to Chandha Decl.). Mr. Wallace appealed, and the Appellate Division, First Department, reversed the lower court's judgement and remanded for a new trial. It indicated that although Justice Bell had properly denied Mr Wallace's motion to suppress, it was "constrained to reverse" because the trial court had failed to obtain Mr. Wallace's written consent before replacing a juror who had been deliberating. <u>People v. Wallace</u>, 250 A.D.2d 398, 399, 672 N.Y.S.2d 691, 692 (1st Dep't 1998).

Mr. Wallace's second trial, before Justice John A.K. Bradley and a jury, began in September 2000. (Tr. at 2). The prosecution elicited testimony that Mr. Wallace had confessed to "fifteen or sixteen" robberies, which exceeded the number with which he had been charged. (Tr. at 556-57). Defense counsel objected to this testimony on the grounds that it was not relevant to the case, but the objection was overruled. (Tr. at 557). The court, however, issued an instruction that the jury should concentrate only on the robberies for which the defendant was on trial. (Tr. at 562). The prosecutor later referred in his summation to the testimony concerning the fifteen or sixteen robberies, but this time defense counsel did not raise an objection. (Tr. at 885). At the conclusion of the second trial, Mr. Wallace was acquitted of the murder charge and convicted of only three counts of robbery. (Tr.

at 989-93).  Over Mr. Wallace's objection, Justice Bradley did not
make a de novo determination that he was a persistent violent
felony offender but instead adopted Justice Bell's finding on that
issue.  (S. at 3).[2]  Justice Bradley then sentenced Mr. Wallace to
consecutive indeterminate terms of imprisonment of 20 years to life
for each of the three counts of robbery.  (S. at 10-11).

     The petitioner appealed, but the judgement was affirmed.
People v. Wallace, 298 A.D.2d 130, 747 N.Y.S.2d 759 (1st Dep't
2002).  He then requested leave to appeal to the New York Court of
Appeals, but his application was denied on December 11, 2002.
People v. Wallace, 99 N.Y.2d 565, 754 N.Y.S.2d 218 (2002).  The
conviction became final on March 11, 2003.  On October 22, 2003,
Mr. Wallace filed a pro se motion pursuant to CPL § 440.10 to
vacate the judgement on the grounds of ineffective assistance of
counsel.  After that motion was denied, he filed a request for
leave to appeal, but that application was rejected on July 15,
2004.  (Chanda Decl., Exh. L).  Mr. Wallace filed his habeas corpus
petition on November 2, 2004.[3]  As two of the claims in the

_____

     [2] "S." refers to the transcript at the sentencing proceeding
following the second trial.

     [3] As the Honorable Michael B. Mukasey, Chief Judge, noted in
a previous order in this case (Order dated Jan. 14, 2005), a pro
se petition is deemed filed on the day that a petitioner delivers
it to prison officials for mailing.  Noble v. Kelley, 246 F.3d
93, 97-98 (2d Cir. 2001), but the record in this case does not
indicate when Mr. Wallace did so.  Because the petition is dated
November 2, 2004, I, like Chief Judge Mukasey, will treat that as
the date the petition was filed.

petition were unexhausted, Mr. Wallace filed a motion for a stay of the instant proceedings to exhaust these claims in state court. However, I denied the stay on the grounds that the two unexhausted claims are wholly without merit. (Order dated March 23, 2006).

Discussion[4]

The petition raises nine grounds for relief, which can fairly be distilled to five discrete claims. The petitioner argues that he was denied due process when (1) the trial court permitted testimony indicating that he had confessed to 15 or 16 robberies; (2) the court failed to make a de novo determination concerning his status as a persistent violent felony offender; and (3) he received a longer, and apparently vindictive, sentence following the second

---

[4] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and mixed questions of law and fact. See Thompson v. Keohane, 516 U.S. 99, 101-12 (1995); Brown v. Artuz, 283 F.3d 492, 492 (2d Cir. 2002). Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The AEDPA standard applies to this case since Mr. Wallace filed his petition after the Act's effective date. See Brown, 283 F.3d at 498 n.2. Nevertheless, since each of the petitioner's claims fails under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis. Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts assess first whether state court's ruling was erroneous under "correct interpretation" of the federal law at issue, then whether the ruling was unreasonable).

trial; further, he alleges that (4) he received ineffective assistance of trial counsel; and (5) the trial court erred by admitting evidence obtained in violation of his Fourth Amendment rights.[5]

_____ The petitioner's first, third, and fourth claims were fairly presented to the state courts prior to the filing of the habeas petition and therefore have been exhausted.  The first and third claims were raised in constitutional terms on direct appeal and in the petitioner's request for leave to appeal to the New York Court of Appeals.  Mr. Wallace raised his fourth claim, alleging ineffective assistance of trial counsel, in his pro se motion to vacate the judgment.  Each of these claims, however, is either procedurally defaulted or without merit.

    A. Uncharged Crimes

Mr. Wallace asserts that the trial court violated his due process rights when it admitted testimony that he had confessed to "fifteen or sixteen" robberies, despite the fact that he was being tried for only six offenses.  The petitioner also claims that the curative jury instructions were deficient, and that the prosecutor's reference to the testimony in his summation aggravated the error.

---

[5] The nine grounds described in the petition have been compressed into the five listed claims as follows: Ground A is the first claim; Ground B is the second claim; Ground C is the third claim; Grounds D, E, and F comprise the fourth claim; and Grounds G, H and I form the fifth claim.

1. <u>Admission of Testimony</u>

Under New York law, evidence of uncharged crimes may be admitted to prove a defendant's motive or intent, complete a narrative, or provide background information to assist members of the jury in their understanding of the crime.  <u>People v. Santiago</u>, 295 A.D. 214-15, 745 N.Y.S.2d 150, 150-51 (1st Dep't 2002).  In general, "it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  Accordingly, a high degree of deference should be given to the Appellate Division's conclusion that the trial court properly exercised its discretion in admitting the testimony, as it was appropriate for establishing the context of Mr. Wallace's confession to the charged crimes. <u>Wallace</u>, 298 A.D.2d at 130, 747 N.Y.S.2d at 760.

Even if the admission of the testimony were improper, an erroneous evidentiary ruling by a state trial court does not rise to the level of a constitutional violation unless the error rendered the trial so fundamentally unfair as to deny the petitioner due process.  <u>See</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Estelle</u>, 502 U.S. at 75.  In order for the admission of evidence to be deemed fundamentally unfair, the petitioner must establish that the evidence was "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  <u>Dunnigan v. Keane</u>, 137

F.3d 117, 125 (2d Cir. 1998) (internal quotation marks omitted; Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985); Williams v. Phillips, 2006 U.S. Dist. LEXIS 32816 (D.N.Y May 23, 20006). Thus, the petitioner faces a heavy burden in showing that the erroneously admitted evidence deprived him of due process. Roberts v. Scully, 875 F. Supp. 182, 189 (S.D.N.Y.), aff'd, 71 F.3d 406 (2d Cir. 1995). Given the other evidence of his guilt, the petitioner cannot satisfy this burden. Mr. Wallace signed statements confessing to two of the robberies, was identified by two of his victims, was found to have some of the stolen items in his apartment, and left his fingerprints at the scene of one of the robberies. (Tr. at 126, 128-29, 349, 352-53, 369, 376-82, 464-91, 501-02, 534-35, 575-77, 613-31). In light of such overwhelming evidence, the admission of testimony relating to uncharged crimes was not sufficiently material to deprive the petitioner of due process.

### 2. Jury Instructions and the Prosecutor's Statements

The Appellate Division found that the petitioner's related claims that the jury instruction regarding the uncharged crimes was inadequate and that the prosecutor's summation aggravated the error were both procedurally barred. Wallace, 298 A.D.2d at 131, 747 N.Y.S.2d at 760. Federal habeas review of a state prisoner's claim is prohibited where a state court's judgment denying the claim rests upon an independent and adequate state law ground. Coleman v.

Thompson, 501 U.S. 722, 729 (1991).  A procedural default in state court is generally an independent and adequate ground barring federal habeas review.  Id. at 744.  However, only a firmly established and regularly followed state rule may be interposed by the state to support a finding of procedural default.  James v. Kentucky, 466 U.S. 341, 348-49 (1984).

Under New York law, a failure to make contemporaneous objections at trial renders a claim of a defective jury charge unpreserved.  CPL § 470.05(2).  This standard applies to curative instructions as well as to the court's charge prior to jury deliberations.  People v. Stephens, 2 A.D.3d 888, 767 N.Y.S.2d 514 (3d Dep't 2003).  Likewise, objections to a prosecutor's summation are not preserved for review if not made during the trial.  See People v. Persons, 245 A.D.2d 845, 846, 666 N.Y.S.2d 773, 773 (3d Dep't 1997). Furthermore the Second Circuit has recognized that the failure to make a contemporaneous objection at trial, including an objection to a court's jury instructions or a prosecutor's summation, constitutes an independent and adequate state ground sufficient to preclude habeas relief.  See Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 2002).  Therefore, because the petitioner failed to make timely objections both to the jury instruction and to the prosecutor's summation, his claims are procedurally barred.

The petitioner can overcome the procedural bar and obtain federal habeas review either (1) by showing cause or prejudice excusing the default; or (2) by demonstrating that a failure to

9

consider the claims would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Cause for procedural default may be established by "'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that "some interference by state officials" made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel.'" Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Prejudice can be established by demonstrating that the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984); Trottie v. Mantello, No. 98 Civ. 5581, 1999 WL 187202, at *4 (S.D.N.Y. April 6, 1999). Alternatively, a petitioner may overcome the procedural bar by proving that a failure to consider his claim would result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). However, only where a constitutional violation has probably resulted in the conviction of an innocent person will a federal habeas court grant the writ even in the absence of a showing of cause for the procedural default. Murray, 477 U.S. at 496.

Here, the petitioner makes no attempt to establish either cause or prejudice. Accordingly, he cannot overcome the procedural bar regarding his claims concerning the curative jury instruction and the prosecutor's summation.

B. <u>Sentence</u>

The petitioner claims that because he was sentenced to 20 years to life for each count of robbery on his second trial, while he had been sentenced to only 12 years to life for each count at his first trial, the second sentence was vindictive and deprived him of due process.  This claim is without merit.

In <u>North Carolina v. Pearce</u>, 395 U.S. 711, 724-25 (1969), the Supreme Court held that due process prohibits the imposition of a greater sentence upon re-conviction at a second trial when the increased sentence is motivated by the sentencing court's vindictiveness.  Furthermore, an increased sentence is presumed to be vindictive unless the judge articulates reasons for the increased sentence based on objective information.  <u>Id.</u> at 726. However, after <u>Pearce</u>, the Supreme Court held that the presumption of vindictiveness does not arise when different judges presided over the first and second trials.  <u>See</u> <u>Texas v. McCullough</u>, 475 U.S. 134, 140 (1986).

> At a subsequent trial before a different judge, the evidence might well be presented in a different light, new witnesses might come forward, others might appear more credible or recite additional facts, and the judge might be impressed with items of proof that either escaped notice at the first trial or were discounted by the first trial judge.

<u>United States v. Perez</u>, 904 F.2d 142, 146 (2d Cir. 1990).  Hence in situations involving different judges, the burden of affirmatively showing vindictiveness falls to the defendant.  <u>See</u> <u>Alabama v. Smith</u>, 490 U.S. 794, 799-800 (1989).

The presumption of vindictiveness does not arise in this case because the petitioner was re-sentenced by a different judge -- Justice Bradley -- than the judge who imposed his initial sentence -- Justice Bell. Consistent with the principle that a different judge may view the same evidence in a different light, Justice Bradley relied upon the petitioner's significant criminal history and the nature of the robberies as the grounds for the increased sentence. (S. at 10-11). Thus, the petitioner has failed to satisfy the burden of demonstrating vindictiveness.[6]

C. Ineffective Assistance of Counsel

The petitioner claims that he was denied ineffective assistance of counsel because: (1) his attorney failed to file a motion to suppress prior to the second trial; (2) he failed to obtain discovery concerning the circumstances of the petitioner's arrest; and (3) he failed to cross-examine police officers

---

[6] The respondent also contends that because the aggregate sentence imposed at the second trial, 60 years to life (20 years to life on three counts of robbery), is shorter than the aggregate sentence imposed in the first trial (80 years to life), the second sentence is not vindictive. However this argument is unavailing because the Second Circuit has concluded that in comparing sentences, the aggregate sentence on counts that were not reversed must be compared with the original sentence imposed on those same counts before appeal. United States v. Markus, 603 F.2d 409, 413 (2d Cir. 1979). If the new sentence on the remaining counts exceeds the original sentence on those counts, the Pearce presumption applies. Id. Here the aggregate sentence on the non-reversed counts (20 years to life on three counts of robbery) is greater than the original sentence imposed on those same three counts (12 years to life on each count). In any event, the Pearce presumption would still be inapplicable on the grounds that there were different judges at the first and second trials. McCullough, 475 U.S. at 140.

adequately about the arrest.

In order to obtain habeas relief due to ineffective assistance of counsel, the petitioner must demonstrate that (1) counsel's performance was deficient, and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). The performance prong of the Strickland test requires a reviewing court to determine whether an attorney's conduct "fell below an objective standard of reasonableness" given the facts and circumstances of the particular case. Strickland, 466 U.S. at 688. The court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In this regard, strategic choices made by defense counsel after investigation of the law and facts are virtually unchallengeable. Id. at 691. The prejudice prong of the Strickland test requires "a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reasonable," and that the trial result would have been different "but for" the claimed errors of counsel. Id. at 687, 694. The performance and prejudice prongs set forth in Strickland may be addressed in either order, and "if it is easier to dispose of an ineffectiveness claim on [one of the grounds]. . . that course should be followed." Id. at 697, 699.

Mr. Wallace's claim of ineffective assistance cannot withstand the strong presumption that defense counsel's conduct falls within

13

the wide range of reasonable professional assistance.  First, it would have been futile for defense counsel to file a motion to suppress evidence prior to the petitioner's second trial.  At the beginning of the first trial, defense counsel brought a motion to suppress, which was denied, and that determination was upheld by the Appellate Division despite reversal of the petitioner's initial conviction.  <u>Wallace</u>, 250 A.D.2d at 399, 672 N.Y.S.2d at 692. Under New York law, although a trial court may permit a defendant to reopen a suppression hearing, absent newly discovered evidence or an order from the appeals court remitting the case for a new trial, "the defendant is not entitled to a <u>de novo</u> suppression hearing as a matter of right."  <u>People v. Hults</u>, 150 A.D.2d 726, 727, 542 N.Y.S.2d  18, 19 (2d Dep't 1989).  Here, because there was no new evidence and no directive from the Appellate Division to reopen the suppression hearing, the petitioner did not have a right to a new hearing. Moreover, in the absence of new evidence, a second motion to suppress would have been futile, and thus counsel's decision to focus his efforts on the other aspects of the second trial was sound strategy that should not be second-guessed.  <u>Strickland</u>, 466 U.S. at 691.

Next, the claim that counsel failed to obtain adequate discovery concerning the circumstances surrounding the petitioner's arrest is without merit.  The trial court made a factual finding that defense counsel had obtained full discovery from the prosecution.  (Order dated March 15, 2004 ("§ 440.10 Order"),

attached as Exh. I to Chandha Decl.). A state court's
determination of a factual issue is presumed to be correct, and is
unreasonable only when the petitioner satisfies his burden of
"rebutting the presumption of correctness by clear and convincing
evidence." 28 U.S.C. § 2254(e)(1); <u>Overton v. Newton</u>, 295 F.3d
270, 275 (2d Cir. 2002). Here, the petitioner has not satisfied
this burden; in fact, counsel's cross-examination of the police
officers revealed that counsel was well prepared concerning the
events of the day of petitioner's arrest. (Tr. at 580-93). This
"general demonstration of preparation and competence carries
significant weight" in showing that counsel pursued the defense
vigorously and diligently. <u>United States v. Aguirre</u>, 912 F.2d 555,
561 (2d Cir. 1990).

Finally, defense counsel's decision not to cross-examine the
police officers more extensively was an appropriate trial tactic.
If counsel had inquired further regarding the circumstances of Mr.
Wallace's arrest, the jury would have discovered he was under the
supervision of a parole officer and had a prior criminal record.
(§ 440.10 Order at 2). Because this information may have
prejudiced the jury, it was appropriate for defense counsel to
limit cross-examination. Given the high-degree of deference
granted to counsel's strategic choices under <u>Strickland</u> and the
fine line that counsel was forced to walk in this case, his
performance cannot be deemed deficient.

Since counsel satisfied the performance prong of <u>Strickland</u>,

it is unnecessary to address the prejudice prong. <u>Strickland</u>, 466 U.S. at 697, 699.

     D. <u>Unexhausted Claims</u>

     Finally, the petitioner asserts (1) that he was denied due process when the trial court declined to make a <u>de novo</u> determination of his status as a persistent felony offender following the second trial; and (2) that his Fourth Amendment rights were violated when his suppression motion was denied and certain evidence was admitted. As noted above, these claims are unexhausted. However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). In the Order dated March 23, 2006, I determined that the petitioner's two unexhausted claims here are, indeed, entirely meritless. A copy of that Order is attached and incorporated by reference.

<u>Conclusion</u>

     For the reasons set forth above, I recommend that the petitioner's application for a writ of habeas corpus be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be delivered with the Clerk of Court, with extra copies delivered to the chambers of Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, New York,

New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 1960, New York, New York 10007.    Failure to file timely objections will preclude appellate review.

                              Respectfully submitted,

                              James C. Francis IV
                              JAMES C. FRANCIS IV
                              UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          July 21, 2006

Copies mailed this date:

Howard Wallace
95-A-0570
Green Haven Correctional Facility
P.O. Box 400
Stormville, New York 12582-0010

Malancha Chanda, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - :
HOWARD WALLACE,                     : 05 Civ. 0567 (SHS)(JCF)
                                    :
            Plaintiff,              :   MEMORANDUM
                                    :   AND ORDER
      - against -                   :
                                    :
DALE ARTUS, Superintendent,         :
Clinton Correctional Facility; and  :
ELLIOT SPITZER, New York Attorney   :
General,                            :
                                    :
            Defendant.              :
- - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Howard Wallace petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on three counts of robbery in the first degree following a jury trial in New York State Supreme Court, New York County. The Petition raises five claims, two of which are unexhausted. Mr. Wallace requests that this Court stay the instant proceeding so he may present his unexhausted claims to the New York State courts. Because I find the two unexhausted claims to be plainly without merit, the petitioner's request is denied.

Background

In the spring of 1993, Mr. Wallace committed several robberies while armed with a knife. One of the victims died of cardiac arrest shortly after Mr. Wallace robbed him. The prosecution charged Mr. Wallace with one count of murder in the second degree and seven counts of robbery in the first degree. See N.Y. Penal Law §§ 125.25(3), 160.15(3).

In July 1994, the Honorable Howard E. Bell presided over a suppression hearing. Mr. Wallace moved to suppress (1) evidence

seized from his apartment; (2) lineup identifications; and (3) statements he made to police officers and to the prosecution. The court denied the motion except with respect to statements Mr. Wallace had made to the Assistant District Attorney.

After a trial before Justice Bell and a jury in September 1994, Mr. Wallace was convicted of one count of murder in the second degree and five counts of robbery in the first degree. Over the petitioner's objection, the court then adjudicated Mr. Wallace a persistent violent felony offender pursuant to New York Criminal Procedure Law ("CPL") § 400.16, and sentenced him to 20 years to life imprisonment on the count of murder, a sentence that was to run consecutively to five consecutive terms of 12 years to life for the five counts of robbery. Mr. Wallace appealed. The Appellate Division reversed the lower court's judgment and remanded for a new trial, indicating that, although Justice Bell had properly denied Mr. Wallace's motion to suppress, it was "constrained to reverse" because the trial court had failed to obtain Mr. Wallace's written consent before replacing a juror who had been deliberating. People v. Wallace, 250 A.D.2d 398, 399, 672 N.Y.S.2d 691, 692 (1st Dep't 1998).

Mr. Wallace's second trial, before Justice John A. K. Bradley and a jury, began in September 2000. The prosecutor elicited testimony that Mr. Wallace had confessed to "fifteen or sixteen" robberies, which exceeded the number with which he had been charged. At the conclusion of the second trial, Mr. Wallace was acquitted of the murder charge and convicted of only three counts

of robbery.  Over Mr. Wallace's objection, Justice Bradley did not make a de novo determination that the petitioner was a persistent violent felony offender but instead adopted Justice Bell's finding on that issue.  Justice Bradley then sentenced Mr. Wallace to consecutive indeterminate terms of imprisonment of 20 years to life for each of the three counts of robbery.

The petitioner appealed, but the judgment was affirmed. People v. Wallace, 298 A.D.2d 130, 747 N.Y.S.2d 759 (1st Dep't 2002).  He then requested leave to appeal to the New York Court of Appeals, but his application was denied on December 11, 2002. People v. Wallace, 99 N.Y.2d 565, 754 N.Y.S.2d 218 (2002).  The conviction became final on March 11, 2002.[1]  On October 22, 2003, Mr. Wallace filed a pro se motion to vacate the judgment pursuant to CPL § 440.10.  After that motion was denied, he filed a request for leave to appeal, but that application was rejected on July 15, 2004.  Mr. Wallace filed his habeas corpus petition on November 2, 2004.[2]

Discussion

The Petition raises nine grounds for relief, which can fairly be distilled to five discrete claims.  Petitioner argues that (1)

---

[1]  This is the date on which the petitioner's opportunity to seek a writ of certiorari from the Supreme Court of the United States expired.

[2]  As the Honorable Michael B. Mukasey, Chief Judge, noted in a previous order in this case, a pro se petition is deemed filed on the day that a petitioner delivers it to prison officials for mailing, Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001), but the record in this case does not indicate when Mr. Wallace did so. Because the Petition is dated November 2, 2004, I, like Judge Mukasey, will treat that as the date the Petition was filed.

he was deprived of a fair trial and denied due process when the trial court permitted testimony indicating that he had confessed to 15 or 16 robberies; (2) the court deprived him of due process when it failed to make a de novo determination concerning his status as a persistent violent felony offender; (3) he was further denied due process because the fact that his second sentence was longer than the first suggests that it was vindictive; (4) he received ineffective assistance of trial counsel; and (5) the trial court erred by admitting evidence obtained in violation of his Fourth Amendment rights.[3]

A.  Exhaustion of Remedies

A habeas corpus petitioner must exhaust all available state court remedies prior to seeking federal review of any issue.  28 U.S.C. § 2254(b), (c).  To comply with this requirement, the petitioner must fairly apprise the state court system of the facts and legal theory upon which he bases each claim, and give the appropriate state court the opportunity to grant relief.  See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Daye v. Attorney General of the State of New York, 696 F.2d 186, 191-92 (2d Cir. 1982).  For a claim to be fairly presented to the state courts, the petitioner need not cite "book and verse on the federal constitution," Picard, 404 U.S. at 278 (1971), but he must articulate the claim in federal constitutional terms sufficient to

---

[3]    The nine grounds described in the Petition have been compressed into the five listed claims as follows: Ground A is the first claim; Ground B is the second claim; Ground C is the third claim;  Grounds D, E, and F comprise the fourth claim; and Grounds G and H form the fifth claim.

4

alert the court to its federal nature.  <u>Daye</u>, 696 F.2d at 191.  <u>Cf.</u>
<u>Davis v. Strack</u>, 270 F.3d 111, 122 (2d Cir.  2001) ("[I]f a
petitioner cites to specific provisions of the U.S. Constitution in
his state court brief, the petitioner has fairly presented his
constitutional claim to the state court.").  To fully exhaust a
claim raised on appeal in New York State, a petitioner must present
each relevant claim in his application to appeal to the New York
Court of Appeals.  <u>Ramirez v. Attorney General of the State of New</u>
<u>York</u>, 280 F.3d 87, 94 (2d Cir. 2001).

As the respondent concedes, the petitioner's first, third, and
fourth claims were fairly presented to the state courts prior to
the filing of the habeas petition.  (Respondent's Memorandum of Law
in Opposition to Petition for Writ of Habeas Corpus at 20).  The
first and third claims were raised in constitutional terms at the
trial level, on direct appeal, and in the petitioner's request for
leave to appeal to the New York Court of Appeals.  Mr. Wallace
raised his fourth claim, alleging ineffective assistance of trial
counsel, in his <u>pro</u> <u>se</u> motion to vacate the judgment.

The petitioner's second and fifth claims, however, are
unexhausted.  As for the second claim, the petitioner apprised the
state courts of his concern that the trial court had erred in
failing to conduct a <u>de</u> <u>novo</u> determination as to whether he fit the
definition of a persistent violent felon, but he complained of a
violation of the criminal procedure law of New York and never
stated the claim in federal constitutional terms.  (Brief for
Defendant-Appellant ("Def. App. Brief"), attached as Exh. A to

Declaration of Malancha Chanda dated Nov. 7, 2005 ("Chanda Decl."), at 24-28).

The fifth claim, which concerns the admission of evidence obtained in violation of Mr. Wallace's Fourth Amendment rights, was not properly brought to the attention of the New York Court of Appeals. It was not raised in the brief submitted by counsel on the direct appeal and was first raised in a pro se supplemental brief filed with the Appellate Division after the prosecution had responded to the petitioner's initial appellate papers. (Supplemental Brief for Defendant-Appellant, attached as Exh. C to Chanda Decl.). When the petitioner's appellate counsel sought leave to appeal to the New York Court of Appeals, he requested consideration of the issues raised in the petitioner's initial appellate brief but made no mention of the Fourth Amendment claim contained in the supplemental brief. (Letter of Michael J. Z. Mannheimer dated Oct. 29, 2002, attached as Exh. E to Chanda Decl., at 2).

B.    Stay and Abeyance of Mixed Petitions

The habeas petition before me is therefore "mixed" in that it includes both exhausted and unexhausted claims. In 1982, the United States Supreme Court held that federal district courts may not rule on mixed petitions; they should instead dismiss such cases without prejudice, thereby giving the petitioners the opportunity to return to state court and giving the state courts the opportunity to rule on the federal claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982). At that time, there was no statute of

limitations on federal habeas petitions.  Since then,  however, the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") has imposed a one-year limitation on such filings.  28 U.S.C. § 2244(d)(1).  Given this limitation, dismissal of a habeas petition, regardless of whether it is with or without prejudice, can now cost a petitioner the opportunity to have a federal court hear any of his claims.  To avoid this result, some courts have chosen to stay mixed habeas petitions and hold them in abeyance while the petitioner exhausts the claims not previously presented to the state courts.

The Supreme Court has provided guidance with respect to these stay and abeyance decisions.  In keeping with the purposes of AEDPA, "stay and abeyance should be available only in limited circumstances."  Rhines v. Weber, 544 U.S. 269, ___, 125 S. Ct. 1528, 1535 (2005).  Stays should be granted if and only "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Id.

Courts have varied in their interpretations of the standard for "good cause."  See, e.g., Fernandez v. Artuz, No. 00 Civ. 7601, 2006 WL 121943, at *5 (S.D.N.Y. Jan. 18, 2006) (collecting cases); see also Pace v. DiGuglielmo, ___ U.S. ___, 125 S. Ct. 1807, 1813 (2005) ("filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted . . . [as a method of coping

with] reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court").  The petitioner cites ineffective assistance of post-conviction counsel as the reason for his failure to exhaust his claims.  Most district courts have ruled that ineffective assistance of counsel suffices to show good cause, and I agree with these decisions.  See, e.g., Rhines v. Weber, 408 F. Supp. 2d 844, 848 (D.S.D. 2005) (collecting cases); Ramchair v. Conway, No. 04 Cv 4241, 2005 WL 2786975, at *18 (E.D.N.Y. Oct. 26, 2005); Boyd v. Jones, No. Civ. 05-73792, 2005 WL 2656639, at * 4 (E.D. Mich. Oct. 14, 2005); Fradiue v. Pliler, No. Civ S-00-2209, 2005 WL 2204862, at *2 (E.D. Cal. Sept. 8, 2005); Martin v. Warren, No. 05-71849, 2005 WL 2173365, at *2 (E.D. Mich. Sept. 2, 2005) ("appellate attorney cannot be expected to raise his own ineffective assistance on appeal"); but see Johnson v. Sullivan, No. Cv 04-7923, 2006 WL 37037, at *3-4 (C.D. Cal. Jan. 4, 2006).[4]  However, because the petitioner's underlying claims are without merit, I need not reach the issue of whether he has shown good cause for his failure to exhaust.

---

[4]    In several cases in which the underlying claims were meritless, courts have mentioned in dicta that ineffective assistance of counsel may not suffice to show good cause.  See Carter v. Friel, ____ F. Supp. 2d ____, No. 2:02 CV 326, 2006 WL 208872, at *4 (D. Utah, Jan. 26, 2006) (underlying claims procedurally barred); Vasquez v. Parrott, 397 F. Supp. 2d 452, 464 (S.D.N.Y. 2005) (underlying claims without merit); Hubbert v. Renico, No. 04-CV-71018, 2005 WL 2173612, at *5 (E.D. Mich. Sept. 7, 2005) (same); Bader v. Warden, No. 02-CV-508, 2005 WL 1528761, at *7 (D.N.H. June 29, 2005) (same).

C.   <u>Merits of Petitioner's Unexhausted Claims</u>

    1.   <u>Persistent Violent Felon Determination</u>

Mr. Wallace asserts that the trial court violated the Fourteenth Amendment of the United States Constitution when it failed to make a <u>de</u> <u>novo</u> determination concerning his status as a persistent violent felony offender.  I understand Mr. Wallace to be raising a due process claim.  For the reasons explained below, this claim is without merit.

Under the New York law, a "persistent violent felony offender" is a "person who stands convicted of a violent felony offense [as defined in N.Y. Penal Law § 70.02] after having been previously subjected to two or more predicate violent felony convictions [as defined in N.Y. Penal Law § 70.04]."  N.Y. Penal Law 70.08(1)(a).  The sentencing of an individual as a persistent violent felony offender requires a ruling that the individual meets this definition, and then, if the court decides that the defendant does fit this category, the "court must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment."  N.Y. Penal Law § 70.08(2).  The initial finding that the individual is a persistent violent felony offender may be reached only after following a procedure outlined in New York Criminal Procedure Law §§ 400.15 and 400.16.

The procedure for adjudicating a person a persistent violent felony offender includes the following steps.  First, the prosecutor must file a statement indicating the date and location of each alleged predicate violent felony conviction and, if the

individual has been incarcerated for any period of time between the
commission of one of the previous felonies and the present felony,
the statement must also indicate the dates of commencement and
termination, as well as the location, of any such imprisonment.
CPL § 400.15(2); N.Y. Penal Law § 70.04(1)(b)(iv). Next, the
defendant is given a copy of the statement and an opportunity to
contest any allegation contained in it. CPL § 400.15(3). If the
defendant contests an allegation in the statement and the
uncontested allegations are insufficient to support a finding that
the defendant meets the definition of a predicate violent felony
offender, the court must hold a hearing on the contested issues.
CPL § 400.15(4), (5). If the defendant does not receive the
statement at least two days before his opportunity to contest its
contents, the court must grant, upon the defendant's request, an
adjournment of at least two days before holding the hearing. CPL §
400.15(6).

The hearing shall be conducted before the court, without a
jury, in accordance with CPL § 400.15(7). The burden is on the
prosecution to show beyond a reasonable doubt that the defendant
was convicted of two or more violent felonies. CPL § 400.15(7)(a).
No conviction obtained in violation of the defendant's federal
constitutional rights may be included in the determination, and the
defendant may at any time in the proceeding contest an allegation
of a conviction on the ground that it was obtained in violation of
the United States Constitution. CPL § 400.15(7)(b). At the
conclusion of the hearing, the court must issue a determination.

CPL § 400.15(7)(c). "Where a finding has been entered pursuant to [CPL § 400.15], such finding shall be binding upon that defendant in any future proceeding in which the issue may arise." CPL § 400.15(8).

As the respondent concedes, this procedure was not followed after Mr. Wallace's second trial. Instead, Justice Bradley adopted the finding Justice Bell had made in the previous proceeding:

> [THE COURT:] I guess the defendant, first, has to be arraigned as a persistent, right?
>
> [ASSISTANT DISTRICT ATTORNEY] DRUCKER: Yes, your Honor.
>
> After the first trial before sentencing, the defendant did contest his per - back in in 1994, after his first trial, the defendant contested his persistent felony status.
>
> There the judge sentenced him as a second [sic] persistent violent felon. There's no need for any further hearings on the matter.
>
> [DEFENSE COUNSEL] MR. STAPLETON: Mr. Drucker states the facts correctly. The defendant was adjudicated a persistent felon, just a violent felon after his first conviction.
>
> He has advised me after the first conviction he, again, wishes to contest that status. Although there appears to be an issue of res judicata, it was contested on appeal. And, as far as I know, he was not affected by an appeal, but he wishes me to exercise that again.
>
> THE COURT: Justice Bell rendered the decision. It's not affected on [sic] the reversal on appeal.
>
> I, too, find him a violent persistent felony offender relying on Judge Bell's decision.

(S. 2-3).[5]

---

[5] "S." refers to the transcript of the sentencing following the second trial.

In his brief to the Appellate Division, the petitioner asserted that Justice Bradley erred in relying on Justice Bell's decision because the latter had been reversed on appeal. The petitioner argued that the reversal of the prior judgment put Mr. Wallace "in the position of one not yet tried," implying that it would be nonsensical to suggest that the adjudication of Mr. Wallace as a persistent violent felon survived the eradication of the judgment. The petitioner is correct that the entire judgment, including both the conviction and the sentence, was affected by the reversal. However, this does not necessarily imply that he was entitled to a new recidivist hearing, nor that the failure to provide such a hearing constituted a violation of due process.

Even if Mr. Wallace could make a persuasive argument that defendants are entitled to de novo recidivist hearings as a matter of due process, his habeas petition could not be granted on this basis, because it is not well-settled law. The AEDPA provides that after a state appellate court has decided a claim on its merits, a federal habeas court may set aside that decision only if it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28. U.S.C. § 2254(d)(1). A decision will be "contrary to federal law" only if it differs from one reached by the Supreme Court "on a set of materially indistinguishable facts" or is "opposite to" a decision of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of

law requires that the state court applied the law in an "objectively unreasonable" way. Lockyer v. Andrade, 538 U.S. 63, 76 (2003); see Williams, 529 U.S. at 410 ("[A]n unreasonable application of federal law is different from an incorrect application of federal law." (emphasis in original)).

The Supreme Court has never ruled on the question of whether the right to a de novo trial includes a right to relitigate one's status as a persistent violent felon. In the cases in which the Court has addressed other aspects of enhanced sentencing procedures, it has taken a narrow view of defendants' constitutional rights. The Supreme Court upheld judicial determination of repeat-offender status, finding that the right to a jury is not implicated. Hildwin v. Florida, 490 U.S. 638, 640 (1989). It ruled that a state may place the burden of producing evidence on the defendant to show in a recidivist proceeding that prior convictions were unconstitutionally obtained. Parke v. Raley, 506 U.S. 20, 31 (1992). Finally, the Court held that a defendant in a federal sentencing proceeding has no constitutional right to challenge the legality of prior state convictions, unless they were obtained in violation of his Sixth Amendment right to counsel. Custis v. United States, 511 U.S. 485, 496-97 (1994).

Clearly established federal law thus does not support Mr. Wallace's argument that the trial court denied him due process when it failed to conduct a de novo determination of his status as a persistent violent felony offender. Consequently, a federal habeas court cannot grant the petition on the basis of this alleged

13

due process violation. Because the due process claim is without merit, staying the petition while Mr. Wallace exhausts it in the state courts would be futile.

### 2. Admission of Tainted Evidence

Mr. Wallace argues that his confessions, evidence seized from his apartment, and witnesses' lineup identifications of him should have been suppressed because they flowed from an improper arrest and an illegal search. He argues that his parole officer, along with police officers, engaged in a ruse to lure him out of his apartment and into the hallway of his building, where they arrested him and obtained access to his apartment only after the arrest. Mr. Wallace alleges that he stepped into the hallway only because he believed his probation officer was requiring him to do so, and he further alleges that he was compelled to admit the officers into his apartment.

Mr. Wallace's Fourth Amendment claim cannot be reviewed by this Court. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482. In the Second Circuit, federal habeas corpus review will be conducted "in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective

mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Mr. Wallace claims that at the pretrial suppression hearing his attorney failed to conduct adequate cross examination of the police officers who arrested him, thereby failing to challenge their versions of the circumstances surrounding his arrest. (Petition for Writ of Habeas Corpus by a Person in State Custody at 9-10, 13-14, 18, 25, 28). However, ineffective assistance of counsel does not by itself constitute an unconscionable breakdown such that a habeas petitioner may obtain review of a Fourth Amendment claim. See Jackson v. Scully, 781 F.2d 291, 297 (2d Cir. 1986); Torres v. Irvin, 33 F. Supp. 2d 257, 275 n.3 (S.D.N.Y. 1998); Brown v. De Fillipis, 717 F. Supp. 172, 179 (S.D.N.Y. 1989). Mr. Wallace may continue to pursue in this Court his ineffective assistance claim, which is based in part on his attorney's conduct in the suppression hearing. See Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Mohamed v. Portuondo, No. 97-CV-3735, 2004 WL 884072, at *8 (E.D.N.Y. March 11, 2004); Taylor v. Kuhlmann, 36 F. Supp. 2d 534, 549 (S.D.N.Y. 1999). But, because his Fourth Amendment claim is foreclosed, it would be futile to stay this proceeding so that he could exhaust state remedies.[6]

---

[6] Mr. Wallace also suggests that Detective George Delgrosso committed perjury while testifying about the search of Mr. Wallace's apartment. However, alleged perjury does not constitute an unconscionable breakdown in the suppression hearing process. See Hernandez v. Filion, No. 05 Civ. 4046, 2005 WL 3164063, at *6 (S.D.N.Y. Nov. 29, 2005).

Conclusion

     The petitioner's request for a stay is denied because the unexhausted claims are without merit. As mentioned above, the habeas corpus petition contains three additional claims that have been exhausted. Before I rule on the substance of those claims, the petitioner may submit a reply to the respondent's opposition to the petition. He shall do so within 30 days of this order.

     SO ORDERED.


_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          March 23, 2006


Copies mailed this date:

Howard Wallace
95-A-0570
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582-0010

Malancha Chanda, Esq.
Assistant Attorney General
120 Broadway
New York, New York  10271